Randall Dairy Company, Appellee, v. Pevely Dairy Company and A. E. Kraemme, Defendants. Pevely Dairy Company, Appellant.

Heard in this court at the February term, 1937. Opinion filed June 3, 1937. Rehearing denied July 30, 1937.

HENSLEY, KRAUSE & HENSLEY, of St. Louis, Mo., and SMITH & MURRAY, for appellant.

LOUIS BEASLEY and EDWARD C. ZULLEY, both of East St. Louis, for appellee.

MR. PRESIDING JUSTICE STONE delivered the opinion of the court.

This appeal by defendant appellant, hereinafter called the defendant, is prosecuted to review a judgment of the city court of East St. Louis wherein plain-

tiff appellee, hereinafter called the plaintiff, recovered a judgment against said defendant in the sum of $10,000. The subject matter of this case has twice been before this court. *Randall Dairy Co. v. Pevely Dairy Co.*, 274 Ill. App. 474, and *Randall Dairy Co. v. Pevely Dairy Co.*, 278 Ill. App. 350.

In the first of these cases the cause was reversed on the pleadings. After the case was reinstated in the trial court, leave was obtained and a new complaint filed under the new Civil Practice Act. The case was then tried and a judgment rendered in favor of plaintiff for the sum of $26,000. That judgment was appealed to this court and was reversed again chiefly upon the pleadings. We there held that the complaint which was in one count, stated two different causes of action in said count, and that, therefore, the complaint was obnoxious to a motion to dismiss in virtue of the aforesaid Civil Practice Act. The case was again reinstated in the trial court and all the former pleadings were abandoned by plaintiff, and leave was had and obtained to file a new complaint which was done. This complaint consisted of two counts. The first count was known as the amended first count and the second count as the first additional count.

The amended first count charged in substance that the defendants Pevely Dairy Company and A. E. Kraemme, contriving and maliciously intending to injure and destroy the plaintiff's good name and reputation, together with its said business in said city of East St. Louis, Illinois, in a certain discourse which the said defendant A. E. Kraemme, in the performance of his duties as assistant manager of appellant, then and there had concerning the plaintiff and the plaintiff's business, in the presence and hearing of divers persons, falsely and maliciously spoken and published the following false, scandalous, malicious and defamatory words:

"Randall is selling watered milk" (meaning thereby that the plaintiff Randall Dairy Company is selling milk to its customers that contains a large percentage of water and is not up to the standard of milk specified by the statute of the State of Illinois);

"Randall's plant is so filthy that the milk that comes out of there is not fit for the hogs to drink";

"Randall's plant is so filthy that it will soon be locked up by the State Food Inspector" (meaning thereby that the plaintiff's place of business was dirty, filthy and unclean, and that plaintiff's plant is being operated in violation of the statute of the State of Illinois).

The fourth paragraph of said amended first count charges that defendant pursuant to its unlawful intent and design to destroy the plaintiff's business with the city of East St. Louis, Illinois, and to establish its dairy business within the territory served by the plaintiff, on April 24, 1932, wrongfully, wilfully and maliciously proceeded to slander, to defame and to scandalize the plaintiff's business, and then and there through its assistant manager, A. E. Kraemme, the defendant, and through its other officers and agents, appeared on the premises of various customers of the plaintiff and then and there within the hearing of such customers uttered and repeated the above scandalous and defamatory words:

The first additional count charged that said defendant both prior and subsequent to April 24, 1932, was engaged in the general dairy business in the city of St. Louis, in the State of Missouri, and also operated a branch dairy plant in the city of East St. Louis, Illinois, with one James Hines as manager and the defendant A. E. Kraemme as assistant manager of the business of said defendant; that it was their duty, among other things, to conduct said dairy business and to solicit new customers for said defendant within said

territory; that the said defendant for the purpose of destroying plaintiff's business and causing plaintiff's employees, to wit, Bob Chambers, Lonnie Duncan, John Taylor, Marvin Boyer, Emmett Holmes and other trusted employees of the plaintiff, to quit the plaintiff, did through its said agent, the defendant A. E. Kraemme, and other agents, wilfully and maliciously attempt to and did induce the above named employees or some of them to quit their employment with the plaintiff and to become employees of the defendant, Pevely Dairy Company, each of said defendants well knowing that the employees named in this paragraph were employees of the plaintiff, and that the loss of the services of such employees by the plaintiff would greatly hinder and impair the workings of the plaintiff's plant, and would hinder and prevent the plaintiff from delivering its goods to its customers, and would destroy the plaintiff's business.

The fourth paragraph of said first additional count alleges that the defendant Kraemme wilfully and maliciously made various false statements to the employees mentioned in paragraph three of this count for the purpose of inducing said employees to terminate their employment with the plaintiff; that such statements and acts on the part of the said defendant, Kraemme, were made and done in the presence of James Hines, who at the time said statements were made was the general manager of the business of the defendant Pevely Dairy Company in East St. Louis, and that said defendant Pevely Dairy Company, through its agent and manager Hines, ratified the acts of the defendant Kraemme in attempting to induce and inducing the various employees of the plaintiff mentioned in paragraph three hereof to terminate their employment with the plaintiff.

Defendant moved to dismiss both the amended first count and first additional count alleging that the first

count does not state a cause of action; that said first count attempts to state a certain cause of action against the defendants in paragraph three for slander, and attempts to state a separate cause of action in paragraph four; that the second count did not allege in said count or any paragraph thereof that any employees of plaintiff were induced to quit or did quit the employment of plaintiff, or that anything charged against the defendants, or either of them, resulted in any damages or any actionable wrong to the plaintiff.

This motion was denied, and defendants filed their answer. Afterwards said answer was withdrawn by leave of court, and leave given to file a motion to dismiss said complaint on the ground that plaintiff had no legal status and was incapable of bringing suit by reason of the fact that it had been dissolved by decree of the circuit court of Sangamon county. Before this motion was heard plaintiff asked leave to file an answer to said motion, and in its said answer set up a copy of a later decree of the circuit court of Sangamon county reinstating the plaintiff to its legal rights as a corporation. This motion to dismiss was denied by the trial court and defendants refiled their answer.

Before the trial, counsel for defendant A. E. Kraemme withdrew as such counsel, by leave of court, and Kraemme afterwards filed no answer, but suffered default.

A trial was had. At the close of plaintiff's evidence and again at the close of all the evidence defendant Pevely Dairy Company moved for a directed verdict. Both of these motions were denied. The jury returned a verdict in favor of plaintiff against both defendants and assessing plaintiff's damages at the sum of $10,000.

Motion for new trial was overruled and judgment was rendered upon the verdict. Defendant Pevely Dairy Company alone brings this appeal, and alleges, among other things, error of the court in overruling

its motion to dismiss the complaint, the admission of evidence, the refusal of the court to direct a verdict, the giving of instructions one to eight inclusive, tendered by plaintiff, in overruling the motion for new trial, and allowing more than nominal damages to plaintiff.

It is first urged that the trial court erred in not dismissing this cause for want of a complaint which complies with the Civil Practice Act. For the trial court to have allowed this motion would have been to disregard our holding in the second appeal. There, substantially the same complaint which is under consideration now, was before us. Our holding was not that the complaint did not state a cause of action, but that it stated two causes of action in the same count. The amended first count and the first additional count in the present complaint separated into two distinct counts the two causes of action which were in the same count in the former appeal. We do not see how the trial court could have ruled otherwise than it did, nor have we seen reason for changing the views expressed in the complaint in the former appeal. *Randall Dairy Co. v. Pevely Dairy Co.,* 278 Ill. App. 350. We are likewise of the opinion that the trial court did not err in refusing to dismiss the cause for want of a legal status on the part of plaintiff. That motion was based upon a decree of the circuit court of Sangamon county dissolving plaintiff as a corporation. The answer thereto set up a later decree of the same court reinstating plaintiff as a corporation. Had the defendant so desired it could have raised the question of the jurisdiction of the circuit court of Sangamon county to enter said decree reinstating plaintiff just as it now complains that it was shut out from doing at a later stage of the trial. That not having been done, we are unable to see how the trial court could have done otherwise than hold that plaintiff had a legal status which

entitled it to sue. We think this ruling disposes of the question raised by defendant that this same matter was not raised by reply to defendant's answer setting up the decree of dissolution of plaintiff. In the appeal of this cause, 278 Ill. App. 350, we said:

"After the denial of the motion, defendants answered the complaint. Whether by so doing they waived the objections set forth in the motion to dismiss is not before us. Both parties have argued the question as being properly saved for review; hence we have considered it." The court then, upon motion of plaintiff, struck out paragraphs 8, 9, 10, 11, 12 and 13 of the answer, and this action is claimed as error. We do not think it is. The matters averred in these paragraphs were all set forth in the motion to dismiss, and ruled upon by the court. Defendants contend that notwithstanding such fact, they were not precluded from again raising the questions by their answer, and are authorized so to do by sec. 48 of the Civil Practice Act, Ill. State Bar Stats. 1935, ch. 110, ¶ 176; Jones Ill. Stats. Ann. 104.048.

Paragraph 4 of said section 48 provides: "The raising of any of the foregoing defenses to the action by motion shall not preclude the raising of them subsequently by answer unless the court shall have made a decision therein; and a failure to raise any of them by motion shall not prejudice raising them by answer."

It will be observed that the statute expressly limits the right to raise such questions by answer to instances where they have not been raised by motion, or where, if so raised, the court has not ruled thereon. If, however, the court has passed on the motion, all the grounds set forth therein are disposed of and adjudicated, and cannot be again presented by answer.

It is contended that it was error to allow the deposition of the defendant Kraemme to be read in evidence against appellant. The record shows that this depo-

sition was taken in virtue of section 60 of the Civil Practice Act, Ill. State Bar Stats. 1935, ch. 110, ¶ 188; Jones Ill. Stats. Ann. 104.060. That section is as follows:

"Upon the trial of any case any party thereto or any person for whose immediate benefit such action is prosecuted or defended, or the officers, directors, or managing agents of any corporation which is a party to the action, may be examined as if under cross-examination at the instance of the adverse party or parties or any of them, and for that purpose may be compelled, in the same manner and subject to the same rules for examination as any other witness, to testify, but the party calling for such examination shall not be concluded thereby but may rebut the testimony thus given by counter testimony."

Kraemme could have been called under this section at any time and whether called as a witness during the trial, or called by deposition, is not material. At any rate a stipulation was entered into between the parties that "said deposition may be taken and read in evidence as though all statutory requirements had been followed." We cannot agree with defendant's contention in regard to this assignment.

It is next urged that it was error to admit in evidence proof of any acts done or words spoken by Hines. In support of this assignment, defendant has set out in its brief the particular items which it says constitute this error. We assume that that which is set out is all that is complained of. It is as follows from the deposition of Kraemme:

Q. "How many times did Hines as manager and you as assistant manager call at Bob Chambers' with reference to him quitting Randall and going to work for Pevely before he did quit?"

A. "I would say approximately eight or ten or maybe a dozen times that we called on him."

Q. "During all these times you and Bob Chambers were soliciting these two or three weeks that was under Hines' direction and under Kerckhoff's direction?

A. "Yes, sir."

Hines had been tried at the first trial of this cause and found not guilty. He was tried as the agent of appellant. This verdict and judgment completely exonerated appellant on the theory of *respondeat superior* for any conduct of Hines. We so held in the first appeal of this case. *Randall Dairy Co. v. Pevely Dairy Co.*, 274 Ill. App. 474. Appellant could not thereafter be convicted in the premises for any conduct of Hines, even had it been alleged in the complaint, which was not the case in the complaint. It is not shown that Hines did or said anything. He was just present. It seems to us that this evidence was competent as carrying home knowledge to appellant, of the effort being made by Kraemme. The court did not err, therefore, in admitting it.

Defendant complains that there was a fatal variance between the allegations of the complaint and the evidence in support thereof. In *Ransom v. McCurley,* 140 Ill. 626, 630, it was said:

"It is well settled that to authorize a recovery in an action for slander the words laid in the declaration, or enough of them to charge the particular offense alleged to have been imputed, must be proved substantially as charged. Evidence of the speaking of equivalent words, although having the same import and meaning, is not admissible." This doubtless states the law of the State, though it is general. Just what latitude may be allowed in the proof, however, does not appear. Measured by the strict rule which counsel claim this case lays down, a part of the statements of the complaint are not supported by exact evidence. There is enough, however, to charge the offense of slander in this complaint which is supported by competent evi-

dence, as the following comparison shows. In paragraph 2 of the amended first count it is alleged as follows:

"Randall's place is so filthy that the milk that comes out of there is not fit for the hogs to drink."

The witness Larsh testified Kraemme told him "That if I knew how dirty it was, I would not think of feeding it to my children. It wasn't even fit for hogs to drink."

Marshall testified: "He said the milk was dirty and wasn't fit for hogs to drink."

To the same effect was the testimony of Lively and Byrne. To undertake to make a distinction between the allegation above quoted and the support thereof is to try to constrain the opinion in the *Ransom* case, *supra,* to mean what it cannot in reason mean. The charge here and the evidence in support of it makes clear the imputation that Randall was selling dirty milk and that is the effect of the ruling in the *Ransom* case, *supra.* The distinction sought here is, in our judgment, hypercritical. Those answers which did not prove the exact words otherwise alleged, if error, were harmless.

Counsel for defendant next raise and argues at length a question which has been very definitely settled by this court. In the first appeal of this case we said:

"We are of the opinion that the uttering of slanderous words by an agent of a corporation while acting within the scope of his employment constitutes an exception to the general rule and that both the principal and the agent may be sued as joint tort-feasors. *Aetna Ins. Co. v. Brewer,* 12 Fed. (2d) 818, 46 A. L. R. 1499; *Nunnamaker v. Smith,* 96 S. C. 294, 80 S. E. 465."

In *Kypes v. Southern Ry. Co.,* 64 S. E. 395, the Supreme Court of South Carolina said:

"It is established that corporations as well as natural persons are liable for the wilful torts of an agent

acting within the general scope of his employment without previous express authority or subsequent ratification.''

This does not render the agent any the less liable. This question has been quite thoroughly adjudicated adversely to defendant's contention.

It is next urged that in this class of cases there can be no punitive damages unless there is proof of actual damages. We can dismiss this as to the first additional count of the complaint. Randall testified that he lost many customers during and after the time Kraemme and others went among them. This cannot be regarded as a coincidence. It was a circumstance which the jury had a right to take into consideration in deciding whether plaintiff had been damaged by the alleged campaign to get his customers. This campaign lasted three weeks during which time the agents of defendant had in their possession a list of plaintiff's customers. Boyd, an employee of plaintiff, was offered more money if he would leave plaintiff and come and work for defendant. The evidence shows that Hines and Kraemme, acting for appellant, induced Chambers to quit his job and go to work for defendant. These facts in our judgment warranted the trial court in submitting the cause to the jury as to the first additional count.

We shall examine this claim as it applies to the first amended count. In support of this contention defendant cites *Betting v. Hobbett,* 42 Ill. App. 174; *Martin v. Leslie,* 93 Ill. App. 44; *Meidel v. Anthis,* 71 Ill. 241, and *Kellerman v. Arnold,* 71 Ill. 632. Conceding that these cases hold to that principle, we are nevertheless of the opinion that those holdings have been superseded by later decisions which make certain that the greater weight of authority supports the proposition that slanderous or libelous words, uttered against a corporation and its manner of doing business,—words which

are actionable *per se,* give rise to the assessment of punitive damages without the necessity of allegation or proof of special damages.

In *Willfred Coal Co. v. Sapp,* 193 Ill. App. 400, in which a libelous publication was uttered against the company by one Sapp, reflecting upon the financial condition of said coal company, the Second District Appellate Court held:

"In some of the earlier cases, notably in *Trenton Mutual Life & Fire Insurance Company v. Perrine,* 23 N. J. Law, 402, decided in 1852, it was held that no words spoken or written of a corporation could be actionable in themselves and that the corporation must always allege and prove special damage in order to recover. This distinction was thought to be justified by the fact that corporation has not, like an individual, any character or reputation to be effected by the libel independent of its trade or business. However, the law is now well settled that a corporation may sue for a libel reflecting on the management of its trade or business, its credit and its property without alleging or proving special damage where the language used is actionable *per se.*" This opinion cites a large number of cases from various jurisdictions. In *American Book Co. v. Gates,* 85 Fed. 729, the plaintiff by leave of court struck out of his complaint all averments with reference to special damage, leaving the same as follows:

"That by reason of said premises and the acts of the defendant as aforesaid, this plaintiff has been damaged and has suffered damage to its business, business reputation and credit in the sum of One Hundred Thousand Dollars."

It was held that one statement in the article complained of was libelous *per se* and that as to such statement the complaint of the plaintiff corporation was sufficient without averment as to special damage.

The *Willfred Coal Co.* case, *supra,* in commenting on *Trenton Mutual Life & Fire Ins. Co. v. Perrine, supra,* has the following to say:

"That decision was rendered in 1852 when there were practically no adjudicated cases upon the subject and the case was necessarily one of first impression. In the *Perrine* case, the libel case, the declaration of plaintiff corporation contained elaborate averments of special damage which were held sufficient upon demurrer. In the opinion the court says, 'It may be admitted without prejudice to the present inquiry that no words spoken or written of a corporation are in themselves actionable, but the corporation must always show special damage in order to recover, and the reason for the distinction may be found in the fact that a corporation has not, like an individual, any character to be effected by the libel independent of its trade or business.' This statement is not in harmony with the holdings of later cases, nor does it commend itself to us as sound on principle where the libelous statements pertain to the trade or business of the corporation and are of such a character as to naturally and proximately result in pecuniary injury."

In *Finnish Temperance Society Sovittaja v. Finnish Socialistic Publishing Co.,* 238 Mass. 345, the court said:

"The conditions of modern society afford ample illustration that a very large and important part of the private business of a community is now done under the form of corporations and the public mischief, or danger to good order and to the peace of the community arises as well from malicious defamation of private corporations as from libelous attacks on natural persons." Many authorities are there cited.

In *South Heaton Coal Co., Ltd. v. Northeastern News Ass'n, Ltd.,* 1 Q. B. 138, it was held that although a corporation cannot maintain an action for libel in

respect to anything reflecting upon them personally, yet it can maintain an action for libel reflecting on the management of their trade or business, and this without alleging or proving special damages, citing many authorities.

In *Interstate Optical Co. v. Illinois Society of Optometrists*, 244 Ill. App. 158, commenting upon words which are actionable *per se* against a corporation, the First District Appellate Court of Illinois concludes as follows:

"After a careful analysis of the contents of the publication, we feel bound to hold that the words directly tend to the prejudice and injury of the plaintiff in its trade and business and are actionable without proof of special damage."

The case of *Stephens v. Hoffman*, 275 Ill. 497, is an ejectment case and not in point here. That was a case in which evidence was offered to overcome the presumption of the delivery of a deed. The same is true of *Sielbeck v. Grothman*, 248 Ill. 435, cited by defendant. The dramshop cases likewise are not in point. We have heretofore held that the words counted on in the amended first count are actionable *per se.* It follows that such words, if proven, will support a verdict of punitive damages without proof of special damages.

Complaint is made that the trial court erred in giving plaintiff's instructions 1 to 8. Defendant is not in a position thus to complain. These instructions refer the jury to the pleadings to determine certain questions. This has consistently been held error both by this court and our Supreme Court. Indeed, we have twice held so in this case. It is necessarily so. When a jury is told they may do certain things if they find the defendant guilty in manner and form as charged in the declaration or some count thereof, how are they going to tell whether their finding is "in manner and form" as charged in the complaint when they do not

have the complaint before them? As well tell the jury that it must find the defendant guilty "according to law" without telling them what the law is.

In this case maybe defendant's instructions told the jury all about the pleadings. We do not know. The defendant's instructions are not contained in the abstract. If said instructions do that thing, then the error above described is cured. In *Reavely v. Harris*, 239 Ill. 526, our Supreme Court said:

"This court has repeatedly held that errors cannot be predicated upon the giving, refusal or modification of instructions unless all the instructions are set out in the Abstract, for the reason that there may have been other instructions given which cured the errors complained of. *Thompson v. People,* 192 Ill. 79; *Siegel, Cooper & Co. v. Norton,* 209 Ill. 201."

In *Madison v. Wedran Silica Co.,* our Supreme Court said:

"The errors assigned by the defendant with reference to the giving or refusing of instructions, either upon the part of the plaintiff or the defendant cannot be inquired into by this court inasmuch as all of the instructions for the plaintiff and the defendant were not fully set out in the abstract. *City of Roodhouse v. Christian,* 158 Ill. 137; *People v. Ambolo,* 343 Ill. 480."

In *Votrian v. Quick,* 271 Ill. App. 259, speaking through Mr. Presiding Justice Barry, we said:·

"Defendant insists that the court erred in refusing instructions defining proximate cause. The abstract shows that some of the instructions given to the jury are not contained therein. Error cannot be predicated upon the rulings of the court in giving or refusal of instructions unless all of the instructions are set out in the abstract. *Thompson v. People,* 192 Ill. 79; *Reavely v. Harris,* 239 Ill. 526."

We regard these holdings as a substantial rule of
procedure and feel that we are bound thereby. There-
fore, appellant not having abstracted its given instruc-
tions, it cannot now be heard to assign error on the
rulings on instructions in this case.

This is the third appeal of this case. We do not find
error in this record which warrants us in again revers-
ing it.

The judgment of the city court is affirmed.

*Judgment affirmed.*